CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

April 02, 2024

LAURA A. AUSTIN, CLERK
BY:
        /s/T. Taylor
        DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **JACK EUGENE LEWIS,** | ) | |
| **Petitioner,** | ) | **Civil Action No. 7:22cv00421** |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **CHADWICK S. DOTSON, Dir., VDOC,** | ) | **By:  Robert S. Ballou** |
| **Respondent.** | ) | **United States District Judge** |

Jack Eugene Lewis, a Virginia inmate proceeding *pro se*, has filed a petition for habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his 2019 convictions in Floyd County Circuit Court.  The respondent has filed a Motion to Dismiss.  Upon consideration of the full state court record, transcripts, and pleadings herein, I will grant the Motion and dismiss the petition because he failed to exhaust his state court remedies and has not overcome the procedural default.

## I.  BACKGROUND

On February 25, 2019, a Floyd County Circuit Court jury convicted Lewis of manufacturing marijuana, possessing more than half an ounce but less than five pounds of marijuana with intent to distribute, possession of a firearm while possessing marijuana with intent to distribute, and ten counts of possession of child pornography (one count of first offense and nine counts of second or subsequent offense.  The jury recommended a sentence of 106 years (out of a possible 140 years).  Following consideration of a presentence report, the court imposed the sentence recommended by the jury, entering its final order on September 10, 2019.

### A.  Summary of Evidence

In the light most favorable to the Commonwealth, the prevailing party, the evidence at trial established that:

In August 2016, Floyd County Sheriff's Office Investigator Rusty Stanley and Deputy King drove to Lewis's residence to serve him with outstanding arrest warrants from Montgomery County.  While serving the warrants, Stanley saw two marijuana plants growing on the left side of Lewis's front door. After explaining the warrants, Stanley took Lewis into custody and secured him in Deputy King's patrol car.  Stanley also used his cell phone to call Garmon, an officer with the New River Valley Drug Task Force, about the marijuana.  After being placed in King's car, Lewis "spontaneously made statements that he had been caught red-handed" and that there were two firearms in the house.  R.[1] at 1044.  He also said he did not want his property destroyed, so he was going to cooperate.  He said that more marijuana plants were growing inside his outbuilding, which was locked.  He asked to go with Stanley down to the building to unlock it so they would not have to break in.  He also gave Stanley the combination to a safe.  Stanley returned Lewis to King's patrol car, and King transported Lewis back to the Sheriff's Office while Stanley waited for Officer Garmon's arrival.

After King and Lewis left, Garmon obtained a search warrant for the property.  Inside the residence, Stanley recovered a .22 caliber long rifle and a 12-gauge shotgun.  Garmon found more marijuana plants on the curtilage of the property, and inside the outbuilding, he found sixty marijuana plants, grow lights, timers, and heating and air conditioning units.  He also found an open package from Canada, containing marijuana seeds and an invoice for the seeds which exceeded $2,000.  He found several ziplock baggies of prepackaged marijuana inside the safe. The total amount of marijuana recovered from Lewis's property was 1,391 grams, just over three

---

[1] Citations herein to "R." refer to the records of the Supreme Court of Virginia in the state habeas case, *Lewis v. Clarke*, No. 200944, which includes the complete record from the Floyd County Circuit Court in *Commonwealth v. Lewis*, Nos. CR16000126-00 through CR16000128-00 and CR1700045 through CR1700055-00, using the Supreme Court's page numbers typed in the lower left corner of each page.

pounds.  Garmon testified that the marijuana was higher quality, and the three pounds had a street value of $6,000 to $7,500.  He further testified that the set up of the grow operation and the amount of marijuana was consistent with distribution, rather than personal use.  This assessment was consistent with the testimony of Audrey Jones, a probation officer in the courtroom during Lewis's initial bond hearing; at trial she testified that when the bond hearing judge asked how he had been supporting himself, Lewis "responded that he had been growing pot."  R. at 1165.

Garmon and Stanley also seized Lewis's cell phone, laptop computer, and digital camera, pursuant to the search warrant, to search for any records or communications regarding Lewis's distribution of marijuana.  The electronics were transferred to Officer McClanahan of the Christiansburg Police Department for forensic evaluation.  Officer McClanahan was the only officer in the district at that time who was trained in computer forensics.  Although she found nothing pertaining to marijuana, Officer McClanahan's evaluation noted the presence of a hash value indicating an image of child pornography on the computer.  She immediately stopped her evaluation and contacted Officer Garmon.

Based on the information from McClanahan, Garmon obtained additional search warrants, allowing search of the computer for child pornography and a new search of Lewis's residence.  During the second search of Lewis's residence, Garmon found four magazines of adult pornography and several items of children's clothing in a bedroom closet.  The clothing consisted of girls' panties, tank tops, a bra, and pajamas.  He found no toys or other evidence of children in the home.

McClanahan then completed a forensic evaluation of the computer to look for child pornography.  After qualifying as an expert at trial in both computer forensics and child pornography, McClanahan testified that she found 136 files on the hard drive of the laptop that

were confirmed Category One images of child pornography and 172 such images on a disc that was in the laptop's disc drive. She then identified ten photographs from those images, which were introduced to the jury.

## B.  Procedural History

Following Lewis' arrest on the marijuana charges in 2016, counsel was appointed and filed a motion for competency to stand trial and sanity at the time of the offense. Later, Lewis wanted to represent himself. The trial court did not rule on that request while the parties were waiting on the results of the mental evaluations, which they did not receive for over six months. In the meantime, in March 2017, Lewis was indicted on the child pornography charges. Lewis still wanted to represent himself, with a standby attorney, but he preferred a new attorney, not the attorney that had been representing him. The court properly advised Lewis of the serious risk of representing himself without having the proper legal training, including pointing out to him the potential maximum sentence to which he was exposed (140 years). The court also admonished Lewis that he would be expected to act appropriately in the courtroom, with proper respect for the rules of the court and decorum, and that disruptive behavior, frivolous objections, and repeatedly inappropriate questions would not be tolerated. Further, if the court found Lewis unable to follow the rules, counsel would be appointed to represent him over his objection. The court then ruled that he could represent himself, with his appointed attorney as standby counsel. At that time, he denied the request of both Lewis and counsel to appoint somebody new.

Over the next couple of months, Lewis filed a motion to continue the trial date, a motion to remove the Commonwealth Attorney from the case, a motion to close the courtroom to spectators during the trial, motion for change of venue, three motions for the judge to recuse himself, motion to wear civilian clothes during trial, motion to transfer from New River Valley

Regional Jail to Western Regional Jail (which he withdrew), motion to appoint a named attorney from Pulaski as his standby counsel, motion to permit the psychologist to testify for the defense, several motions for a more thorough mental evaluation to be performed at Marion, motion to have the trial videotaped, and a motion for continuance.  Other than the motion to wear civilian clothes during trial and the motion to continue, which were granted, the remaining motions were denied.  R. at 737–772.

One month before the trial date, Lewis advised the court that he no longer desired to represent himself.  He hoped to retain an attorney of his choosing, but that did not happen, and the court appointed new counsel.  The case was continued again and re-set for a two-day trial to begin February 25, 2019.  New counsel filed motions for a computer expert and another psychological evaluation.  Both were denied.  R. at 855–866. Two weeks before the new trial date, Lewis desired to represent himself again; he wanted another continuance and indicated he would go on a hunger strike and water strike if the continuance were not granted.  The Commonwealth learned of this plan from Lewis's recorded phone calls from the jail.  By February 25, however, Lewis had decided to let his attorney represent him, and the trial went forward.

After presentation of all evidence, defense counsel suggested that the jurors be excused for the day, while counsel and the court reviewed jury instructions.  The jurors, however, preferred to try to finish in one day, and the court allowed them to do so.  The jury convicted Lewis of all charges.  They then recommended sentences of one year for possession of marijuana with intent to distribute, five years (the minimum) for manufacturing marijuana, five years (mandatory) on possession of a firearm with marijuana, and the maximum sentence on each child

pornography charge, five years on the first charge and ten years on each of the nine charges of second or subsequent offense possession of child pornography.  R. at 1327–1330.

Following the trial court's entry of the final judgment order on September 10, 2019, imposing the 106 years recommended by the jury, defense counsel filed an *Anders*[2] appeal in the Virginia Court of Appeals, alleging that the trial judge abused his discretion by sentencing him to 106 years when the high end of the Sentencing Guidelines recommended six years and four months.  Lewis filed *pro se* briefs challenging the sufficiency of the evidence to support the convictions, the admission of "hearsay" testimony by Audrey Jones, and admission of child pornography photographs.  The court, finding the appeal to be "wholly frivolous," granted counsel's *Anders* motion to withdraw and denied the appeal on May 18, 2020.  Lewis did not appeal to the Supreme Court of Virginia.

Lewis then filed a state petition for writ of habeas corpus in the Supreme Court of Virginia on July 21, 2020, alleging ineffective assistance of counsel.  In particular, he alleged that counsel was ineffective in (1) failing to object to Jones' testimony on the grounds that she testified about statements made Lewis in violation of his Fifth Amendment rights; (2) collaborating with the Commonwealth against him; (3) failing to notify him of the Commonwealth's notice of intent to offer the certificate of analysis from the lab in lieu of live testimony; and (4) failing to file a motion to suppress the pornography images found on his laptop computer.  On October 15, 2021, the court dismissed his petition.

Lewis timely filed the current § 2254 petition on July 25, 2022, raising the following issues:

---

[2] The Supreme Court has ruled that an appointed attorney representing a defendant on appeal, if he finds no legitimate grounds for appeal, may file a motion to withdraw, along with a brief identifying any potential issues possible, with notice to the defendant, so that he may file a *pro se* brief on his own behalf.  *Anders v. California*, 386 U.S. 738, 744 (1967).

1. Violation of attorney-client privilege by listening to recorded jail phone calls between the defendant (when he was representing himself) and *pro se* legal assistants;

2. Ineffective assistance of counsel in failing to question juror Link and failing to strike juror Link, resulting in a tainted jury.

3. Ineffective assistance of counsel in that counsel put on no defense, failed to make objections to the prosecutor's argument regarding the 17 pairs of girls' underwear found in his home, and failed to object to the inflammatory photographs of child pornography introduced into evidence by the prosecutor.

4. Prosecutor's motion to exclude petitioner's mental health evidence was untimely filed and should not have been granted.

5. Lewis' Fifth Amendment rights were violated because he was not given *Miranda* warnings[3] before discussing the marijuana with Officer Stanley.

6. The trial court unfairly denied defense counsel's request to recess until the second day of trial for closing arguments and jury deliberations.

7. The prosecutor introduced highly prejudicial evidence by holding up 17 pairs of girls' underwear and by showing the jury the nine worst pornographic pictures from his computer.

8. Officer Stanley lied to obtain the search warrant for Lewis' property and perjured himself at trial.

9. The prosecutor unfairly inflamed the emotions of the jury by showing them the pornographic pictures.

---

[3] In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court announced a rule requiring officers to advise suspects of their right to remain silent and right to have an attorney before conducting custodial interrogation. Those rights are referred to as *Miranda* rights.

10. The judge was biased (granting all of the prosecution's motions and objections and none of the defense's), and the judge was angry, threatening, and intimidating to him.

## II. Discussion

### A. Limitations on Federal Habeas

A federal district court reviewing a § 2254 petition is limited by the separate but related doctrines of exhaustion, procedural default, and independent and adequate state law grounds. These procedural doctrines promote the principles of finality, comity, and federalism, recognizing a state's legitimate interests in enforcing its laws, preventing disruption of state judicial proceedings, and allowing states the first opportunity to address and correct alleged violations of a state prisoner's federal rights. *Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991).

A habeas petitioner is required to exhaust his claims in state court before his claims can be considered in federal court. 28 U.S.C. § 2254(b)(1)(A). To exhaust his claims, a petitioner must present his federal constitutional claims to the highest state court, on the merits, before he is entitled to seek federal habeas relief. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). If a petitioner still has the right to pursue a state remedy by any available procedure, he has not exhausted his claim. 28 U.S.C. § 2254(c). Further, the petitioner must present to the state court the same operative facts and the same controlling legal principles that he seeks to present to the federal court. *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995). Failure to do so "deprive[s] the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 732.

A separate but closely related issue is the doctrine of procedural default. If a state court has clearly and explicitly denied a petitioner's claim based on a state procedural rule that

provides an independent and adequate ground for the state court's decision, that claim is procedurally defaulted for purposes of habeas review. *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). A state procedural rule is independent if it does not depend on a federal constitutional ruling, and it is adequate if it is firmly established and regularly applied by the state court. *Yeatts v. Angelone*, 166 F.3d 255, 263–64 (4th Cir. 1998). A claim that has not been presented to the highest state court and would be procedurally barred as untimely or successive if the petitioner tried to present the issue to the state court now is considered simultaneously exhausted and defaulted. *Bassette v. Thompson*, 915 F.2d 932, 936–37 (4th Cir. 1990).

Such a procedurally defaulted claim can be considered by a federal habeas court only if the petitioner can show both cause for the default and actual prejudice from the claimed violation. *Coleman*, 501 U.S. at 750. Cause for procedural default requires the existence of some objective factor, external to the defense and not attributable to the prisoner. *Id.* at 756–57. To show prejudice to overcome procedural default, a petitioner must show that the claimed violation worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

**B.  Lewis's Claims are Procedurally Defaulted**

Every claim in the § 2254 petition is simultaneously exhausted and defaulted. The only issue presented in the current petition that was previously raised on appeal is part of claim 7, that the prosecution introduced highly prejudicial evidence by showing ten of the worst photographs of pornography from his computer to the jury. The appellate court did not consider this claim on the merits, citing Rule 5A:18, because the defense did not object in the trial court, thereby defaulting the issue under state law. Even if the court had considered Lewis' objection to the

photographs, Lewis failed to exhaust the issue by appealing to the Supreme Court of Virginia, the state's highest court.

Although the current petition raises some issues regarding ineffective assistance of counsel, and ineffective assistance of counsel was raised in his state habeas petition before the Supreme Court of Virginia, the specific instances alleged in the state court were not the same issues as those raised in this court.  In state court, he alleged (1) that trial counsel was ineffective for not objecting on Fifth and Sixth Amendment grounds to the testimony of Audrey Jones that Lewis told the court at his initial appearance that he supported himself growing marijuana; (2) that his first attorney collaborated with the Commonwealth; (3) that his first attorney never notified him or his second attorney that the Commonwealth had filed notice to offer the certificate of analysis into evidence instead of bringing the analyst to testify; and (4) that counsel never filed a motion to suppress the evidence found on his laptop computer.  The ineffective assistance of counsel claims raised in claims 2 and 3 of the § 2254 petition are entirely different, involving counsel's failure to strike a juror from the panel, failure to object to the pornographic pictures and the 17 pairs of girls' underwear, and failure to present a defense.  To properly exhaust his ineffective assistance of counsel claims, Lewis is required to present the same operative facts and legal arguments in this court as those presented to the state's highest court. *Duncan*, 513 U.S. at 365–66.  He did not do so.

No further discussion of his failure to exhaust is necessary.  Throughout his petition, Lewis acknowledged that he had not previously raised these issues.  The court must now consider whether Lewis has shown cause and prejudice to overcome his default.

**C.  Traditional Cause and Prejudice Analysis**

Claims 1, 4, 5, 6, 7, 8, 9, and 10 are subject to the cause and prejudice analysis set forth in *Coleman*.  Because claims 2 and 3 involve ineffective assistance of counsel, a different test governs those claims, and they will be discussed in the next section.

Throughout his petition, Lewis states that his issues were not previously made because: referring to claim 1, "jail house lawyer did my appeal . . . without representation mistakes were possibly made."  Pet. at 6.  For claim 2, "a layman's . . . simply making mistakes" and "ignorance"  *Id.* at 7, 8.  For claim 3, "because I depended on a jail house lawyer, who failed me."  *Id.* at 9.  Claim 4 not raised before because "simply oversight by jailhouse lawyer."  *Id.*  at 10.  Finally, in response to question 13, he stated, "all grounds are being presented (I believe) for the first time here," and his reason for not presenting them earlier is that he "put my faith in jail house lawyer and he did not present. His oversight."  *Id.* at 12.  He could not have stated the cause for his default more clearly.

The law is well settled that a petitioner's ignorance of the law, even though he is unrepresented, is not good cause.  *United States v. Cowley*, 814 F.3d 691, 699 (4th Cir. 2016).  Even if he had been represented by a licensed attorney rather than a jailhouse lawyer, negligence of a prisoner's post-conviction attorney is not adequate cause for default.  *Coleman*, 501 U.S. at 753; *Maples v. Thomas*, 565 U.S. 266, 280 (4th Cir. 2012).  Because he has established no cause for his procedural default, the court need not consider the issue of prejudice.  *Kornahrens v. Evatt*, 66 F.3d 1350, 1359 (4th Cir. 1995).  Claims 1, 4, 5, 6, 7, 8, 9, and 10 will be dismissed as procedurally defaulted.

**D.  Ineffective Assistance of Counsel Claims under *Martinez***

When a petitioner seeks federal relief for a defaulted claim of ineffective assistance of counsel at his trial, the Supreme Court applied a special test for "cause and prejudice" in

*Martinez v. Ryan*, 566 U.S. 1, 13–15 (2012).  Under *Martinez*, a petitioner must show (1) that the defaulted claim of ineffective assistance of trial counsel is a "substantial" claim; (2) that counsel in the state postconviction proceeding was ineffective or non-existent; and (3) that the state post-conviction proceeding was the first one in which petitioner was actually or effectively allowed by state law to raise the claim.  *Owens v. Stirling*, 967 F.3d 396, 423 (4th Cir. 2020).

The last two prongs of the test clearly apply in this case.  Lewis had no licensed attorney, and his lack of an attorney satisfies the second prong.  Although Lewis tried to raise some ineffectiveness claims on his direct appeal, they were summarily dismissed as not cognizable, because under Virginia law, the first time that ineffective assistance claims may be raised and considered is during the state post-conviction proceeding.  *Lenz v. Commonwealth*, 544 S.E.2d 299, 304 (2001).  To determine if Lewis can overcome his procedural default on his ineffective assistance claims, I must determine if those claims are "substantial."

To be substantial, the defaulted claim must have some merit.  *Martinez*, 566 U.S. at 14. Just because a claim is substantial enough to get past the procedural bar, however, does not mean that the petitioner will ultimately prevail on the merits.  It means only that the court will consider the otherwise defaulted claim.  *Id.* at 17.

In determining whether an ineffective assistance of counsel claim has merit, a federal habeas court must look to the Supreme Court's definition of ineffective assistance of counsel, set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  To show ineffective assistance of counsel, a petitioner must demonstrate that (1) counsel's performance was so deficient that he was not functioning as counsel guaranteed by the Sixth Amendment *and* (2) that the deficient performance prejudiced the defense.  *Id.* at 687.  Deficient performance requires a showing that counsel's performance fell below "an objective standard of reasonableness . . . under prevailing

professional norms." *Id.* at 688.  The reviewing court must not rely upon "the distorting effects of hindsight," but must presume that counsel's decisions and actions fell within the wide range of reasonable strategy decisions. *Id.* at 689–90.  To establish prejudice, a petitioner must show that there is "a reasonable probability that the outcome of the proceedings would have been different," which means "a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

I will now discuss whether Lewis's ineffective assistance claims are substantial.

1.  <u>Claim 2 – Juror Link</u>

Lewis alleges that counsel was ineffective (a) because he did not ask juror Link a follow-up voir dire question that Lewis requested him to ask, namely whether Lewis fired Link when Link worked for him 20 years before, and (b) because counsel did not strike Link from the panel.

During voir dire, the court asked the prospective jurors if any of them knew or were related to the accused.  A juror raised his hand, saying "I do know him." R. at 993.  The prosecutor asked follow-up questions as follows:

> MR. BRANSCOM:  Yes, sir.  How do you know Mr. Lewis?
>
> JUROR:  My line of work, I've worked for him before.
>
> MR. BRANSCOM:  And your name, sir?
>
> JUROR:  Jeffrey Link.
>
> MR. BRANSCOM:  Mr. Link, okay.  And your association with Mr. Lewis, how long ago was that?
>
> JUROR:  Twenty years ago, probably.
>
> MR. BRANSCOM:  And what kind of work did you do for him?
>
> JUROR:  Water pump on his well.

> MR. BRANSCOM:  Okay.  Would your involvement with him
> from twenty years ago, have you had anything to do with him in
> the past 20 years then?
>
> JUROR:  No.
>
> MR. BRANSCOM:  **Would that in any way affect your ability
> to render a fair verdict today?**
>
> JUROR:  **No.**

*Id.* at 993–994.

Defense counsel then advised the court, "That covered my questions," and he did not ask

Link any questions.  *Id.* at 994.  Lewis alleges that he asked the attorney to ask Link if Link had

been fired, which was not asked.  Following the remaining voir dire, the parties exercised their

peremptory strikes, each side being given five strikes.  *Id.* at 1014.  Link was ultimately seated

on the jury.

On habeas review, federal courts generally afford high deference to counsel's decisions

during voir dire.  *Gardner v. Ozmint*, 511 F.3d 420, 426 (4th Cir. 2007).  What questions to ask

are presumed to be matters of strategy.  *Bennett v. Stirling*, 170 F. Supp. 3d 851, 873 (D. S.C.

2016).  As with other strategy decisions, counsel has wide latitude, and the court presumes that

counsel's decisions were made in the exercise of reasonable judgment under prevailing

professional norms.  *Strickland*, 466 U.S. at 688–90.  Counsel could reasonably have decided

that such a question in open court about being fired could be alienating to other jurors.  Besides,

Link had already said that nothing in his experience—from 20 years earlier—would affect his

ability to render a fair verdict.  Thus, the record does not show either deficient performance or

prejudice from counsel not asking that question.

Likewise, the decision to exercise a peremptory strike, or not, is a tactical decision.  Two

jurors  were related to law enforcement officers; one juror's cousin was married to Lewis's

estranged son, and every prospective juror had read something about the case in the newspaper. R. at 1000–1002.  Under the circumstances, counsel could reasonably have decided to use his challenges on other prospective jurors who appeared more problematic.  *Gardner*, 511 F.3d at 426.  Link was only one juror of twelve, and the evidence in the case was overwhelming.  Again, the record shows no deficient performance and no prejudice from seating Link on the jury.  This claim is not substantial.

    2.  <u>Claim 3 – No Defense and Failure to Object</u>

    Lewis alleges that trial counsel was ineffective because he did not put on a defense after the prosecution rested and did not object to introduction of "9 child porn pictures" (there were actually 10 photos) and 17 pair of children's underwear that were held up before the jury during closing argument.  The decision whether to call a defense witness is a strategic decision "demanding the assessment and balancing of perceived benefits against perceived risks," to which courts must afford great deference.  *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004).  Likewise, decisions on the conduct of trial, such as what evidence to introduce, what objections to make, and what arguments to pursue fall within the realm of professional decisions that are appropriately made by the attorney, not the client.  Absent ineffective assistance of counsel, counsel's decisions on these matters are final.  *Gonzalez v. United States*, 553 U.S. 242, 248–49 (2008).

    Lewis asserts that counsel failed to put on a defense because he did not introduce the testimony of any defense witnesses once the prosecution rested.  However, he does not identify any witness who could or would have testified for the defense, nor does he indicate what such witness would say.  Therefore, it is impossible to determine any prejudice to him.

Nor has Lewis demonstrated that counsel's decision fell outside the realm of professional reasonableness. Although he has not identified any potential defense witnesses that counsel could have called, the record reflects that counsel had subpoenaed Dr. Rebecca Loehrer, a psychologist. R. at 980. During a motion in limine heard immediately before the trial started, the trial court ruled that her testimony would not be admissible at the guilt-phase of the trial, because mental health, except for legal insanity, is irrelevant to guilt or innocence. The court strongly admonished counsel not to mention mental health in any form during the trial. *Id.* at 967. Counsel's performance is not deficient when he objects to but complies with a court's ruling.

The only other potential defense witness apparent from the record would be Lewis himself. The record is replete with examples of Lewis saying whatever he wanted to say in court, such that putting him on the witness stand could reasonably have been considered a huge risk, not to mention that his testimony would open the door to the jury learning about his prior felony convictions. *Almon v. United States*, 302 F. Supp. 2d 575, 587 (D. S.C. 2004) ("It is legitimate trial strategy to refuse to put a defendant . . . on the stand to protect introduction of past criminal history, even over the objection of the defendant."). Having failed to demonstrate either deficient performance or prejudice, Lewis has not raised a substantial claim for ineffective assistance of counsel for failing to call witnesses after the prosecution rested its case.

In exercising reasonable professional judgment on what objections to make, the lawyer's decisions are influenced by what is permissible under the rules of court and rules of evidence, but also by tactical considerations regarding the strategic plan for the trial. *Gonzalez,* 553 U.S. at 249. The prosecution charged Lewis with ten counts of possession of child pornography, although more than 300 such verified images had been found in his possession, either on the

16

computer hard drive or on the CD in the disk drive.  Under Virginia law, each picture can be the basis for a separate unit of prosecution.  *Mason v. Commonwealth*, 636 S.E.2d 480, 484 (Va. Ct. App. 2006).  Remembering that the prosecution bears the burden of proof, introduction of each picture that the defendant has been charged with possessing would be foundational.  Evidence of guilt is always prejudicial, but relevant admissible evidence cannot be excluded unless its probative value is *substantially* outweighed by its prejudicial effect.  *Stickle v. Commonwealth*, 808 S.E.2d 530, 540 (Va. Ct. App. 2017) (holding that the probative value of three child pornography videos starring the defendant was *not* outweighed by their prejudicial effect in prosecution for possession of 22 still photographs of child pornography).  The Commonwealth could have chosen to introduce more photos, but limited itself to ten, one for each charge.  *See Chapman v. Commonwealth*, 697 S.E.2d 20, 25 (Va. Ct. App. 2010) (holding that introduction of 20 pictures was sufficient to prove ten counts of possessing child pornography).  Given the law, counsel could not have expected to win an objection to admission of the photos.  Counsel is not required to make frivolous objections, and his failure to do so is not deficient performance.  *See Sharpe v. Bell*, 593 F.3d 372, 383 (4th Cir. 2010).

The same analysis applies to counsel's failure to object to the prosecution's demonstrative use of the children's underwear during closing argument.  The underwear had already been admitted into evidence, and counsel is entitled to call the jury's attention to evidence that has been admitted.  For that reason, an objection was not likely to be successful, and counsel's performance is not deficient for failing to make a frivolous objection.  *Id.*  Even if the prosecutor's conduct during closing were improper, counsel could have valid strategic reasons for not making an objection.  Refraining from objections during closing argument to avoid irritating the jury is a standard trial tactic.  *Bennett v. Angelone*, 92 F.3d 1336, 1349 (4th Cir.

1996).  Others choose not to object to improper argument or evidence because they do not want to highlight the matter to the jury or make it appear more important.  *Evans v. Thompson*, 881 F.2d 117, 125 (4th Cir. 1989).  These types of strategic choices are "virtually unchallengeable." *Strickland*, 466 U.S. at 690.  I find that these claims for failing to object are not substantial.

### III. CONCLUSION

Lewis procedurally defaulted his claims by failing to exhaust them in state court.  He has failed to overcome his procedural default.  Accordingly, I will grant the Respondent's Motion to Dismiss.

I decline to issue a certificate of appealability, because Lewis has not made a substantial showing of the denial of a constitutional right and reasonable jurists would not find the court's procedural rulings to be debatable or wrong.

A separate Final Order will be entered this date.

Enter:  April 2, 2024

*/s/ Robert S. Ballou*

Robert S. Ballou
United States District Judge